IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **JAMES RALPH ODOM,** | § |
| | § |
| | § |
| **Plaintiff,** | § CIVIL ACTION NO. 6:23-CV-00032-JCB-JDL |
| | § |
| v. | § |
| | § |
| **GREGG COUNTY SHERIFF'S DEPARTMENT, ET AL.,** | § |
| | § |
| **Defendants.** | § |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

On January 19, 2023, Plaintiff James Ralph Odom, an inmate confined at the Gregg County Jail, Longview, Texas, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging multiple instances of excessive force by Gregg County Jail staff. (Doc. No. 1.) This case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the action. (Doc. No. 2.)

**BACKGROUND**

1. **Odom's Original Complaint**

In his original complaint, Odom alleged three instances of excessive force by Gregg County Jail staff. In the first incident, Odom claims that he suffered injuries to his back, elbow, and shoulder when several guards, including "Deputy Grizzle" and "Jailer Ramo," restrained Odom. (Doc. No. 1.) In the second incident, Odom claims that he suffered mental trauma and injuries to his arm when "Jailer Owens" grabbed Odom's arm through his cell door's food slot and tased him. *Id.* And in the third incident, Odom claims that "Deputy Hoover" deployed a chemical

1

agent into Odom's unventilated cell and left him inside for thirty minutes. *Id.* Odom also claims that Hoover took his Bible and did not return it. *Id.* The original complaint names as defendants the Gregg County Sheriff's Department, Deputy Grizzle in his official capacity only, and Jailer Ramo, Jailer Owens, and Deputy Hoover in their individual capacities. *Id.* Odom is requesting money damages and to be moved from the north unit to the south unit of the Gregg County Jail. *Id.*

2. **The Court's Order for a More Definite Statement**

Upon review, the court determined that Odom's complaint failed to provide sufficient information for the court to properly evaluate the merits of his claims. On May 2, 2023, the court ordered Odom to submit a more definite statement of the facts involved in each of these claims by submitting a response to the questions detailed in the order. (Doc. No. 17.) Specifically, the court asked Odom to answer the following questions regarding each instance of force:

   a. On what date did the incident occur?
   b. Identify by name the officers who used force against you.
   c. Where did the use of force occur?
   d. Fully describe the situation immediately before the use of force or assault.
   e. Before the use of force occurred, did you do anything that the defendant(s) may have thought was a verbal threat or threatening move, however wrong the defendant(s) might have been? If so, give details.
   f. Describe in detail what injuries you sustained as a result of the assault.
   g. Describe what the officer did to you to cause the injury.
   h. Were you escorted to the Medical Department?
   i. Did a nurse or other medical provider come to your cell to document your injuries?
   j. Were you hospitalized?
   k. What treatment and/or medication have you been given, if any, for your injuries for that use of force?
   l. What is your medical condition now?
   m. Did the defendant(s) sustain any injuries during the use of force?

  n. Have you been involved in any other incidents with the same officers?

  o. Did you receive a disciplinary case connected to the use of force incident? If yes, for what infraction were you charged.

  p. Did you file a grievance regarding the officer(s)' actions in the use of force incident?

*Id.* The court's order also instructed Odom to respond to these questions by copying each question as posed by the court and then writing the answer underneath each question in numbered paragraphs that correspond to the question being answered. *Id.*

### 3. Odom's Response to the Court's Order for a More Definite Statement

On May 12, 2023, Odom submitted his response to the court's order for a more definite statement. (Doc. No. 19.) The response does not follow the above-noted question and answer format. Rather, his response only answers some of the questions posed, in a single paragraph spanning three pages, and without any reference to which answer is in response to which question. *See id.* However, the court gleaned the following information from the response:

  a. <u>Odom's Preexisting Injuries</u>: Odom's has several preexisting injuries due to a motorcycle accident, including injuries to his left shoulder, lower back, and ribs, as well as head and brain trauma.

  b. <u>The First Incident</u>:
    i. The first incident occurred three days after he was arrested on the third floor of the north jail unit.
    ii. Odom was injured when several guards, including Deputy Grizzle and Jailer Ramo, restrained Odom after Odom had fashioned a weapon from a broom handle and used it, along with other inmates, to attack jail staff. He says Ramo rammed him to the ground with a shield and bent his elbow back. He claims, however, that this force was unnecessary because Grizzle and Ramo knew he had already abandoned the stick before they restrained him.
    iii. In his original complaint, Odom says his left elbow and shoulder, and lower back were injured but that his lower back "stopped hurting." (Doc. No. 1, at 5.) But in his response to the order for a more definite statement, he says his preexisting back injury was aggravated by the altercation and he does not give any further explanation of his shoulder injury. *See* (Doc. No. 19.)
    iv. Odom was not escorted to the medical department or a hospital and was not seen by a medical provider or otherwise treated for his injuries.
    v. The defendants were not hurt during the altercation.

3

      vi. Odom did not receive a disciplinary case due to the altercation.

      vii. Odom did file a grievance regarding the use of force.

c. <u>The Second Incident:</u>

      i. Odom says he can't remember where the second incident occurred.

      ii. In his original complaint, Odom says Jailer Owens grabbed his arm through his cell door's food slot. (Doc. No. 1, at 5.) The response does not elaborate on the incident except to say that Owens "did not use her chain of command and acted on her own." He also says that Owens is not taser certified.

      iii. Odom says he did not receive any medical treatment.

      iv. His response does not explain what he was doing immediately before the incident or if there is any reason Owens might have found Odom's conduct threatening. *See* (Doc. No. 19.)

d. <u>The Third Incident:</u>

      i. Odom says the third incident occurred on January 9, 2023, in his cell.

      ii. Odom claims that Deputy Hoover opened his cell door and used a chemical agent. He says that his cell does not have ventilation.

      iii. He also contends that during this incident, Hoover took his Bible, threw it on the ground, and refused to return it. He claims that Hoover took his Bible to punish him.

      iv. Odom says that he suffered spiritual harm due to Hoover taking his Bible and never returning it. He does not, however, allege that he suffered any harm from the gassing. His response is primarily concerned with the fact that his Bible was taken and not returned. *See* (Doc. No. 19.)

      v. Odom did receive a disciplinary case due to the incident. He says that the reason was "destruction of property."

## LEGAL STANDARD

Under 28 U.S.C. § 1915A, a court shall review, before docketing if feasible or in any event as soon as practicable after docketing, any complaint in a civil action wherein a prisoner seeks redress from a governmental entity or officer, or employee of a governmental entity. During its review, the court must identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1). Section 1915A applies regardless of whether the plaintiff has paid a filing fee or is proceeding *in forma pauperis* ("IFP"). *See Martin v. Scott*, 156 F.3d 578, 579 (5th

Cir. 1998) ("The plain language of [§ 1915A] indicates that it applies to any suit by a prisoner . . . regardless of whether that prisoner is or is not proceeding IFP.").

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also* Fed. R. Civ. P. 8 (To state a plausible claim for relief, a pleading must contain (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought"). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Iqbal*, 556 U.S. at 678.

The pleading of a *pro se* plaintiff is to be "liberally construed" and is "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, even with *pro se* litigants, "conclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient for a well-pleaded complaint. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *S. Christian Leadership Conf. v. S. Ct. of State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)). If the facts alleged in a complaint do not permit the court to infer more than the mere

possibility of misconduct, a plaintiff has not shown entitlement to relief. See *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006).

## DISCUSSION

### I. The Gregg County Sheriff's Department

Odom's complaint names the Gregg County Sheriff's Department as a defendant in this case, but the Sheriff's Department does not have jural authority. Under Federal Rule of Civil Procedure 17(b), a party to a lawsuit must have the capacity to be sued. A department of a local government entity must "enjoy a separate legal existence" to be subject to a lawsuit. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). The Fifth Circuit has held that Texas does not allow county or municipal police departments to be sued directly. *Id.* at 313–14; *see also Crull v. City of New Braunfels, Texas*, 267 Fed. App'x 338, 341–42 (5th Cir. 2008) (unpublished) ("Therefore, the Police Department is not a separate legal entity apart from the City and the district court did not err in dismissing the claims against the Police Department.").

Here, Gregg County Sheriff's Department is a subsidiary department of Gregg County. Odom does not allege that Gregg County has provided any jural authority to the Sheriff's Department to engage in litigation or that the Sheriff's Department has a separate legal existence. Therefore, Odom's claims against the Sheriff's Department should be dismissed as the Sheriff's Department is a non-jural entity.

### II. Deputy Grizzle & Jailer Ramo

Odom alleges that approximately one week after he was arrested and booked into the Gregg County Jail, he fashioned a weapon from a broom handle and used it to "run" at the guards because he was unsatisfied with his dorm room in the jail. (Doc. No. 19, at 1.). Odom appears to allege that other inmates also took part in the assault. *Id.* In response, Deputy Grizzle organized a group of

officers to restore order. (Doc. No. 1, at 4.) Grizzle, Jailer Ramo, and other unnamed officers tried to restrain Odom. *Id.* In the process of restraining Odom, Ramo hit Odom with a shield, "rammed" him to the ground, and bent his left elbow. (Doc. No. 19, at 1.) Odom argues that this force was unnecessary because Ramo and Grizzle knew that Odom had abandoned the broom handle before the officers used force. (Doc. No. 1, at 4.)

Odom claims the officers injured his left shoulder, left elbow, and lower back. (Doc. No. 1, at 5.) Odom alleges that Deputy Grizzle denied Odom medical care after the incident. *Id.* Odom says his elbow healed after a month but that his preexisting back injury was, and still is, aggravated by the incident. (Doc. No. 19, at 2.) Odom is suing Deputy Grizzle in his official capacity only and Jailer Ramo in his individual capacity. (Doc. No. 1, at 2.) Odom is requesting money damages and injunctive relief in the form of being moved from the north unit to the south unit in the Gregg County Jail. (Doc. No. 1, at 5.)

    a. <u>Deputy Grizzle</u>

The Eleventh Amendment generally bars individuals from suing a state in federal court. *McKinley v. Abbott*, 643 F.3d 403, 405 (5th Cir. 2011). When a plaintiff sues state officials in their official capacity, he is, in effect, suing the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, claims against state officials in their official capacity are also barred by the Eleventh Amendment unless an exception exists, such as when the state consents to the suit or the plaintiff seeks prospective injunctive relief instead of monetary damages. *See McKinley*, 643 F.3d at 405–06 (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Here, Odom has sued Grizzle in his official capacity for money damages. However, Gregg County has not consented to this lawsuit, therefore Grizzle retains Eleventh Amendment immunity

from monetary claims in his official capacity. As such, the court lacks jurisdiction to adjudicate Odom's claims against Grizzle for money damages. *See* Fed. R. Civ. P. 12(b)(1).

However, Odom is also seeking prospective injunctive relief in the form of transfer to the south unit of the Gregg County Jail. As noted above, prospective injunctive relief is a valid exception to a state's Eleventh Amendment immunity, but only if two requirements are met. First, the plaintiff must show that the defendant's challenged conduct is likely to cause the plaintiff future injury and that the relief sought will prevent that future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (standing to seek injunctive relief depends on whether plaintiff is likely to suffer future injury from the defendant's conduct); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Second, the plaintiff must seek relief from the state official who has the authority to provide it, otherwise any injunction would be meaningless. *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001).

Here, Odom requests that he be moved from the north unit to the south unit because of one incident involving Deputy Grizzle. But he does not allege facts showing that there is any continuing or future threat of harm based on the alleged past illegal conduct. *See O'Shea*, 414 U.S. at 495 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]"). Further, it is unclear whether an injunction against Grizzle would be effective because Odom has not alleged facts showing that Grizzle has the authority to transfer Odom to the south unit. *See Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001). As such, Odom has failed to demonstrate that he has standing to seek the requested injunctive relief. *See Lyons*, 461 U.S. at 105; Fed. R. Civ. P. 12(b)(1).

The court also notes that although Odom claims that Grizzle was directly involved in this incident, his pleadings clearly indicate that he is only suing Grizzle in his official capacity. (Doc. No. 1.)

      b. <u>Jailer Ramo</u>

The Supreme Court has held that the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one: "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). The court considers six non-exclusive factors to determine if the force used is objectively unreasonable, including:

> (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.

*Id.* at 397; *Welsh v. Correct Care Recovery Sols.*, 845 Fed. App'x 311, 317 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 438 (2021). Further, a court must also consider the government's legitimate interests in managing the facility where the individual is detained and appropriately defer to those policies and practices that jail officials believe are necessary "to preserve internal order and discipline[,] and to maintain institutional security." *Id.* at 397 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

However, a plaintiff must allege at least some form of injury. *Haddix v. Kerss*, 203 Fed. App'x 551, 554 (5th Cir. 2006). The injury need not be significant. *Id.* But "it must be more than *de minimis*, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Cowart v. Erwin*, 837 F.3d 444, 453 (5th Cir. 2016) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)); *see also Johnson v. Glick*, 481 F.3d 1973, 1033 (2nd Cir. 1973) ("Not

9

every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")

For example, in *Siglar v. Hightower*, the Fifth Circuit held that an inmate's sore, bruised ear was a *de minimis* injury. 112 F.3d 191 (5th Cir. 1997). There, the court noted that the inmate did not seek or receive medical treatment and the injury resolved in three days. *Id.* at 193–94. But in *Gomez v. Chandler*, the Fifth Circuit held that a prisoner suffered more than *de minimis* injuries when multiple officers knocked and scraped the prisoner's head against a concrete floor, and repeatedly punched and kicked him in the face for multiple minutes. *Id.* at 924–25. There, the court noted that the prisoner's injuries included "cuts, scrapes, contusions to the face, head, and body" for which he did receive medical treatment. *Id.*

Here, Odom appears to acknowledge that the guards were trying to restore order after he and other inmates attacked jail staff with a make-shift weapon fashioned from a broom handle. (Doc. No. 19, at 1.). But even if, as Odom claims, he was no longer a threat to the guards when they used force, he has failed to plead sufficient facts to show that his alleged injuries rise to the level of a constitutional violation.

First, Odom's response to the court's order for a more definite statement says that his preexisting back injury was aggravated by the altercation. (Doc. No. 19, at 2.) But in his original complaint, he says the back injury "stopped hurting." (Doc. No. 1, at 5.) The court declines to credit Odom's inconsistent factual assertions. *See Twombly*, 550 U.S. at 570 (A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible"). Second, Odom says his left elbow hurt for a month after the incident, but a sore elbow, without more, does not rise to the level of a constitutional injury. *See Welsh*, 845 Fed. App'x at 318 (affirming finding that bruising and swelling that pretrial detainee suffered when a food slot was

10

kicked shut on him was no more than a *de minimis* injury). Third, Odom fails to provide any details at all about the left shoulder injury. *See* (Doc. No. 1, at 5.)

The court gave Odom an opportunity to expand on these issues in its order for a more definite statement, but his response failed to provide any clarity. *See* (Doc. No. 19.) Thus, Odom has failed to raise a constitutional claim against Ramo.

      c. <u>Claims Against Doe Defendants</u>

To the extent that Odom intends to assert excessive force claims against any other officers involved in this altercation, his complaint fails to allege sufficient facts to identify them, let alone delineate their conduct. As such, the court **RECOMMENDS** that the claims against the Doe Defendants be **DISMISSED** from this action without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

**III.**    **Jailer Owens**

Odom alleges that approximately two weeks after he was arrested and booked into the Gregg County Jail, Jailer Owens used excessive force by grabbing Odom's arm and tasing him through a cell door's food slot. (Doc. No. 1, at 4; Doc. No. 19, at 3.) Odom claims that he was "not a threat" to Owens when she used force. (Doc. No. 1, at 5.) Odom claims that Owens caused mental trauma and injuries to Odom's right arm. *Id.* Odom claims that he did not receive medical treatment afterward. (Doc. 19, at 3.) Odom is requesting money damages. (Doc. No. 1, at 5.)

Here, construing this claim liberally, the court is satisfied that Odom has provided sufficient information to state a constitutional claim against Owens. Although Odom does not provide specifics of the injury suffered, the court declines to dismiss being tased as a *de minimis* injury when, as here, the inmate has alleged that he was separated from the officer who used force by a physical barrier and that he posed no threat to the officer. *See Darden v. City of Fort Worth,*

*Texas*, 880 F.3d 722, 731 (5th Cir. 2018) ("[A] constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest."); *see also Austin v. City of Pasadena, Texas*, 74 F.4th 312, 327 (5th Cir. 2023) (collecting cases involving excessive force with tasers where detainees were not resisting or threatening).

Further, Odom has stated a colorable claim against Owens for deliberate indifference to Odom's serious medical needs. Deliberate indifference to a prisoner's serious medical needs constitutes a Fourteenth Amendment violation and states a cause of action under section 1983. *See Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. 2021). When "a pretrial detainee's claim is based on a jail official's episodic acts or omissions, the proper inquiry is whether the official had a culpable state of mind in acting or failing to act." *Id.* For instance, the Fifth Circuit has noted that a plaintiff can show a culpable mental state if a jail official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Here, Odom alleges that Owens intentionally, unnecessarily, and without proper authority, grabbed his arm and tased him. Odom claims that his arm was injured, and that Owens did not take him to receive medical treatment after the incident. It is standard operating procedure for an inmate to be examined by a medical professional after a use of force incident to document any injuries. As the officer using force, Owens was required to notify her supervisor or the infirmary regarding the use of force. Thus, Odom has stated a colorable claim for deliberate indifference of Odom's serious medical needs. Owens allegedly had direct knowledge of the serious injury that she caused, and she failed to make sure Odom received medical treatment after the incident. *See Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

## IV. Deputy Hoover

Odom claims that on January 9, 2023, Deputy Hoover deployed a chemical agent into Odom's unventilated cell and left him inside for thirty minutes. (Doc. 1, at 5.) Odom alleges that he had been kicking his cell door but had stopped "long before [Hoover] used the chemical agent." *Id.* Odom says he was denied medical treatment after, although he does not allege any injuries from the gassing. *Id.* During this same incident, Odom claims Hoover took his Bible and did not return it. (Doc. 19, at 2–3.) Odom alleges the confiscation caused mental and spiritual pain. (Doc. 1, at 5.) Odom is requesting money damages. *Id.*

### a. The Gassing

Here, the *Kingsley* factors favor Deputy Hoover. Odom admits that Hoover deployed the chemical agent to stop Odom from kicking and causing damage to his cell door. But even if, as Odom claims, he had stopped kicking his cell door before Hoover used the gas, Odom fails to plead sufficient facts to show that his injuries rise to the level of a constitutional violation. The use of chemical agents on an inmate is not *per se* unconstitutional. *See, e.g.*, *Amos v. Jefferson*, 861 F. App'x 596, 604 (5th Cir. 2021) (upholding "the brief use of chemical agents to maintain or restore discipline or to compel compliance with an order") (internal citations omitted). Further, Odom alleges that he suffered mental and spiritual trauma when Hoover took his Bible, but he does not allege any injury from the gassing itself. *See* (Doc. 1, at 5); *Haddix*, 203 Fed. App'x at 554 (a plaintiff must allege at least some form of injury to maintain a claim for excessive force).

The court gave Odom an opportunity to expand on these issues in its order for a more definite statement, but his response failed to provide any clarity. *See* (Doc. 19.) As such, Odom has failed to state an excessive force claim against Hoover.

### b. The Bible

Odom does not cite to any statutory or constitutional law in his pleadings regarding the confiscation of the Bible. However, construing Odom's complaint liberally, Odom may be asserting claims for deprivation of property, and/or the violation of his rights to free exercise of religion under either the First Amendment or the Religious Land Use and Institutionalized Personas Act. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (the pleadings of a *pro se* plaintiff should be liberally construed). As such, the court will address each possible claim.

1. *Review as a Property Claim*

The Due Process Clause of the Fourteenth Amendment prohibits government officials from unlawfully taking private property. *See* U.S. CONST. amend. XIV, § 1. But the Supreme Court has also said that even the intentional taking of property is not a due process violation "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In Texas, the tort of conversion is recognized as an adequate post-deprivation remedy for the intentional, unauthorized taking of personal property. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). Thus, Odom's claim for deprivation of property is not actionable under section 1983.

2. *Review under RLUIPA*

To the extent that Odom seeks relief under the Religious Land Use and Institutionalized Personas Act (RLUIPA), RLUIPA only offers injunctive relief against government officials acting in their official capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 329 (5th Cir. 2009); *Sossamon v. Texas*, 563 U.S. 277, 288 (2011). Odom does not indicate that he is suing Hoover in his official capacity for prospective injunctive relief. Additionally, he does not request the return of his Bible or access to another religious practice to take its place in his request for injunctive relief. Here, Odom only seeks monetary damages from Hoover in his individual capacity. As such,

Plaintiff's RLUIPA claims should be dismissed for failure to state a claim upon which relief may be granted.

### 3. *Review under the First Amendment*

To the extent that Odom asserts that Deputy Hoover violated his First Amendment free exercise rights, free exercise protections require the government to refrain from interfering with the religious beliefs and practices of individuals. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Here, Odom claims that Hoover confiscated his Bible to punish him and failed to return it. Odom claims that he has suffered spiritual harm. Construing this claim liberally, Odom has stated a colorable First Amendment claim against Hoover.

## CONCLUSION

Having conducted a screening pursuant to section 1915A, the court **RECOMMENDS** that the claims against the Gregg County Sheriff's Department and Defendant Grizzle in his official capacity be **DISMISSED** without prejudice for lack of jurisdiction. The court **FURTHER RECOMMENDS** that the claims against Defendant Ramo be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim, and that the claims against the Doe Defendants be **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. The court **FURTHER RECOMMENDS** that the excessive force and RLUIPA claims against Defendant Hoover be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

The court has determined that the First Amendment claim against Defendant Hoover and the excessive force and the medical deliberate indifference claims against Defendant Owens should proceed past the initial screening stage.

Within fourteen (14) days after receipt of the Magistrate Judge's report and recommendation, any party may serve and file written objections to the findings and recommendations contained in the report and recommendation. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report and recommendation within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 8th day of December, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE